# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., <br><br> Plaintiff, <br><br> v. <br><br> ALLIANT INSURANCE SERVICES, INC., and STONE POINT CAPITAL LLC, <br><br> Defendants. | C.A. No. 20-1248-LPS |

## MEMORANDUM ORDER

At Wilmington this **3rd** day of **March, 2021**:

WHEREAS, on September 14, 2020, Plaintiff Arthur J. Gallagher & Co. ("Plaintiff" or "Gallagher") filed an action in the Delaware Court of Chancery;

WHEREAS, on September 17, 2020, Defendants Alliant Insurance Services, Inc. ("Alliant") and Stone Point Capital LLC ("Stone Point," and together with Alliant, "Defendants") removed the case to this Court (D.I. 1);

WHEREAS, on September 22, 2020, Plaintiff filed a motion to remand the case to the Court of Chancery (D.I. 4);

WHEREAS, on October 16, 2020, this Court heard oral argument on Plaintiff's motion to remand (D.I. 29) ("Oct. Tr.");

WHEREAS, at the conclusion of the October 16 hearing, the Court granted Plaintiff's motion to remand as well as Plaintiff's motion to recover its attorneys' fees and costs, pursuant to 28 U.S.C. § 1447(c) (*see id.* at 50-51; *see also* D.I. 32);

1

WHEREAS, on October 26, 2020, consistent with the Court's ruling, Plaintiff filed a 3-page application, along with supporting documentation, seeking an award of $294,815.40 in attorneys' fees and expenses (D.I. 34) ("Application");

WHEREAS, on November 9, 2020, Defendant Alliant filed a 17-page opposition brief, proposing that the Court reduce Plaintiff's requested fees to $158,000.00 (D.I. 37);

WHEREAS, on November 16, 2020, Plaintiff filed a 10-page reply brief, along with additional supporting documentation, providing further support for its application and increasing its requested fee award to $355,937.35, to account for the extra fees incurred in pressing the Application (D.I. 40);[1]

WHEREAS, on November 18, 2020, Alliant filed a 3-page sur-reply brief (D.I. 43-2);[2]

WHEREAS, on February 17, 2021, the Court heard oral argument on Plaintiff's Application for attorneys' fees (D.I. 50) ("Feb. Tr.");

WHEREAS, on February 23, 2021, the parties filed a letter and proposed order advising the Court that they had conferred and reached an agreement to resolve their dispute relating to Plaintiff's Application (D.I. 49) ("Agreement");

---

[1] In its October 26 Application, Plaintiff had expressly notified Defendants and the Court it was "reserv[ing] the right to supplement this application with a request for further fees to be incurred *should Defendants oppose this Application*." (D.I. 34 at 3) (emphasis added) It is well-settled that a party awarded attorneys' fees may seek "fees upon fees," as otherwise the prevailing party might not be fully compensated for the impact of the actions of the opposing parties. *See, e.g., Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998); *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 360 (D. Del. 2015); *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 183 (Del. Ch. 2003). The Court is not persuaded by Defendants' contention (*see* D.I. 43-2 at 1) that Gallagher waived its right to seek fees it spent in responding to Defendants' opposition to Gallagher's requested fee amount.

[2] Alliant's request to file its sur-reply (D.I. 43) is granted. The Court has considered the sur-reply and has found it helpful to resolving the issues addressed in this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the parties' Agreement is **ADOPTED**, as further specified below.

Although the Court is pleased that the parties ultimately agreed on a resolution with respect to Plaintiff's Application for attorneys' fees, it is regrettable that this occurred only after an enormous expenditure of resources by Plaintiff and the Court (as well as, of course, Defendants). Sadly, Defendants' "scorched earth" (Feb. Tr. at 33-34) opposition to the Application followed Defendants' similarly bold yet futile opposition to Plaintiff's motion to remand.

This case never should have been removed from the Court of Chancery to this Court. The principal basis for Defendants' opposition to Plaintiff's motion to remand was that Plaintiff had allegedly joined Defendant Stone Point, a Delaware limited liability company, fraudulently, in order to defeat complete diversity and prevent removal. (*See, e.g.*, D.I. 21 at 1) ("[Gallagher's] motion to remand should be denied because Stone Point was fraudulently joined solely to invent grounds to try to resist proper diversity removal of this action and to invent Delaware jurisdiction where there is none.") The Court addressed Defendants' contention, and the entirety of Plaintiff's motion, at the October hearing, explaining in pertinent part:

> Ultimately, . . . [D]efendants have failed to show that [D]efendant Stone Point was fraudulently joined, and that failing is dispositive on this [remand] motion.
>
> . . . To establish . . . fraudulent joinder, the defendant bears what is described in the cases as a heavy burden to show that there is no reasonable basis in fact or colorable ground supporting the claim against [D]efendant Stone Point or no real intention in good faith to prosecute the action against Stone Point or to seek a joint judgment. That summary is from [the Third Circuit's decision in] *Boyer* . . . .[3]

---

[3] *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111-12 (3d Cir. 1990).

3

> The Third Circuit has also told us in, for instance, *Batoff v. State Farm*,[4] . . . that joinder is not fraudulent unless defendants can show that the claims against the defendant – here against Stone Point – are "wholly insubstantial and frivolous."
>
> . . . [W]hen I apply [the appropriate] legal standards and consider the arguments made by . . . [D]efendant[s], I find that . . . [D]efendants have not come in my view even close to showing that the claims against Stone Point in the complaint are wholly insubstantial and frivolous.
>
> Let me run through some of the arguments [D]efendants have made today and in their briefing.
>
> Defendants have asserted [P]laintiff[] ha[s] no good faith intention to prosecute claims against Stone Point; and as I suppose evidence of it, they draw my attention to other suits that . . . [P]laintiff has brought that did not include allegations against Stone Point.
>
> They note that discovery has even been pursued in some of those other cases and discovery wasn't taken with respect to Stone Point; and they suggest that [P]laintiff's litigation efforts elsewhere in these other courts are failing. And all of this is somehow supposed to amount to evidence . . . that . . . [P]laintiff has no good faith intention to proceed against Stone Point in this action.
>
> . . . I'm not sure that any of those arguments even have any relevance to the legal inquiry I have to undertake, but to the extent they are relevant they're wholly unpersuasive.
>
> I don't think [P]laintiff has to give an explanation, but [it has] indicated that [it] only recently [(and after initiating some of those other lawsuits)] learned of actionable conduct by Stone Point. That is certainly a plausible explanation for how we got where we are in this case.
>
> But, again, the burden isn't on . . . [P]laintiff here, it is very much on . . . [D]efendant[s].
>
> Plaintiff alleges direct violations of its legal rights by Stone Point. There is – on this record, . . . every reason to believe that [P]laintiff does intend to prosecute its claims against Stone Point and to seek a joint judgment against both [D]efendants.

---

[4] *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852-53 (3d Cir. 1992).

4

> Defendants' denial of [P]laintiff's factual allegations . . . cannot be credited on the current procedural posture given the legal framework that I have already gone through.
>
> Defendants' arguments about veil piercing and the threat that . . . [P]laintiff's theory of liability would, as . . . [D]efendant[s] put[] it in . . . [their answering] brief, upend routine business[5] . . . is just utterly unconvincing . . . .
>
> And there are allegations throughout this detailed complaint about Stone Point allegedly directly committing wrong directed at . . . [P]laintiff.
>
> . . . Again, I'm not here to say that those allegations, any or all of them are true. That will be the subject presumably of evidentiary proceedings in the Court of Chancery. But there certainly are allegations of direct conduct and misconduct by [D]efendant Stone Point.
>
> Defendants argue that [P]laintiff[] ha[s] no colorable claims against Stone Point as a matter of law. Essentially, it seems to me [D]efendants are trying to press their motion to dismiss in the context of my consideration of [P]laintiff's motion to remand.
>
> . . . But in my view, having carefully looked at the argument, . . . [D]efendant[s] ha[ve] not shown that any of . . . [P]laintiff's three claims against Stone Point are wholly insubstantial and frivolous, much less . . . have [they] shown all three claims . . . are wholly insubstantial and frivolous.

(Oct. Tr. at 39-46)

Having granted the motion to remand, the Court then turned to the issue of whether also to grant Gallagher's request that it be awarded the attorneys' fees it had incurred in overcoming Defendants' removal and winning remand of this case back to the Court of Chancery. The Court stated that "[w]hile I don't think the motion for remand is a close call," the fees question was "a close call." (*Id.* at 47) Still, 28 U.S.C. § 1447(c) contemplates that "[a]n order remanding the

---

[5] D.I. 21 at 2.

5

case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," and the Supreme Court has explained that district courts may exercise their discretion to award such fees "where the removing party lacked an objectively reasonable basis for seeking removal," *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).[6] As Defendants' removal met this standard, the Court would be awarding Gallagher its fees, as it explained:

> . . . Here, I don't see an objectively reasonable basis [for the attempted removal]. . . . When the allegations are what they are, when the law . . . indicates that I need to credit those allegations in the complaint, when it is undisputed that Stone Point is a nondiverse defendant, and when . . . [D]efendants' argument for removal consists largely of denying the merits of what is alleged in a complaint that I have to take as true, when the burden is so heavy [on] fraudulent joinder, and in the full context in which the removal occurred, I think that there is not an objectively reasonable basis to remove . . . and [for Defendants] then to vigorously oppose a motion to remand. And I think it is fair to consider that full context.
>
> . . . Here, . . . [D]efendants' actions have resulted in . . . [P]laintiff losing a full month of prosecuting a case that the Court of [C]hancery had already decided to hold an expedited hearing on . . . . [A]lmost exactly a month . . . ha[s] passed in which the Court of [C]hancery has not been able to have the hearing that it had scheduled very quickly after [P]laintiff filed this complaint.
>
> Notably to me, the removal was done on the eve of that expedited hearing in the Court of Chancery. It may well have been that the Vice Chancellor was prepared or actively preparing for that proceeding. And, if so, those efforts may have been wasted and now may need to be repeated.
>
> . . . I moved much more quickly on this motion than I normally would, and it has been very much at the expense of other

---

[6] *See also Martin*, 546 U.S. at 140 ("The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.").

6

>       cases. And had I not done that, more time would have been lost to [P]laintiff and to the Court of Chancery.
>
>       [Further,] the argument[s] that . . . [D]efendants have made, many of them have sort of ra[t]cheted up the heat in this case . . . and made it seem that, in part, this case needed some urgent attention; but now having looked at it more closely, I just think . . . [D]efendants' arguments are overblown, and that has factored into my decision to award fees.
>
>       For example, . . . today, again, [D]efendant[s] repeated what is in their briefing, I think calling what [P]laintiff [is] engaged in a shameless attempt at forum shopping.
>
>       . . . I don't think that is a fair characterization of this case. I think that is an unreasonable characterization of what . . . [P]laintiff[] ha[s] done and what appears to be [Plaintiff's] litigation strategy.
>
>       And so that is an example of . . . [D]efendant[s] not just removing, not just fighting remand, but fighting it vigorously and with . . . allegations fired back at [P]laintiff that . . . there is not evidence to support.
>
>       . . . And then there was . . . [t]his overblown rhetoric about veil piercing and about how . . . what . . . [P]laintiff [is] asking me to do and ha[s] persuaded me to do will somehow have such negative repercussions for Delaware corporate law. That even someone as far removed . . . from the chain of liability as a consultant [to a corporation], might now find themselves on the hook for corporate liabilities, and that somehow that is the implication of what I am being asked to do[.] I just think [Defendants' argument] misses the mark by quite a long distance.

(Oct. Tr. at 47-50)

Defendants took a similar approach in their opposition to Plaintiff's Application. Defendants asserted at length that Gallagher spent an excessive amount of time on its motion to remand, using too many attorneys and billing at rates that were too high – yet Defendants failed to present any evidence that what Plaintiff's attorneys did was anything but necessary to competently and effectively litigate the remand issue in the circumstances presented here,

7

circumstances largely of Defendants' own making. Both Defendants themselves used multiple lawyers, at a total of four law firms, to file extensive briefs and make numerous arguments against remand. Defendants chose not to disclose how much time and money their numerous attorneys spent litigating the remand motion. (*See* D.I. 40 at 6) ("Alliant . . . and Stone Point . . . each hired national and local Delaware counsel for this matter. Clearly, despite Alliant's arguments on fees, they agree with Gallagher that this is a complex case – one that is national in scope and one in which a client benefits from the perspective of both national and Delaware counsel. . . . Alliant fails to disclose anything about the fees Defendants' own lawyers . . . are charging in this case.")

In opposing the Application, Defendants contended that the remand motion had presented "a straightforward legal issue," adding that the Court "had found that it wasn't a close call." (Feb. Tr. at 15) In other words, Defendants suggested that the Court should reduce Plaintiff's fee request by approximately 30% because (in part) Plaintiff should have realized that the arguments Defendants were making would not take much effort to defeat. Of course, in reality, Plaintiff had to meet the arguments Defendants were making – including by researching, writing, and then arguing responses to them. It would have been irresponsible for Plaintiff's counsel to instead have merely assumed the Court would automatically recognize the lack of merit of Defendants' positions.

Defendants' other principal objection to the Application was that, based on Defendants' own survey of approximately 100 fraudulent removal cases, making Defendants pay as much as Gallagher requested would be "unprecedented." (*See, e.g., id.* at 15, 16, 21-22, 26; *see also* D.I. 37 at 16-17 & n.10) Defendants reported "the highest award discovered was $87,437.87, and the vast majority of decisions involved awards of less than $20,000." (D.I. 37 at 16) Defendants'

8

analysis, however, wholly failed to account for the totality of circumstances presented here, including the expedited nature of the litigation, its complexity, Defendants' efforts to further complicate the issues (e.g., raising veil piercing, diversity, and merits issues), and the necessity for Plaintiff to respond with "all hands on deck." (*See, e.g.*, Feb. Tr. at 7, 33; *see also id.* at 5 (Plaintiff's counsel stating, "[t]his was a massive undertaking because of the way that defendants chose to litigate the situation"); D.I. 40 at 7-8 ("Alliant's conduct and arguments turned what could and should have been a straightforward procedural motion into an overblown merits-based analysis. . . . These merits-based arguments required in-depth research of issues of Delaware state law, Third Circuit federal law, Texas state law, and California state law, all of which were required because of Alliant and Stone Point's strategy."))

As the Court stated to defense counsel during the February hearing:

> You wrote lengthy briefs [and you also] incorporated the motion to dismiss briefing by reference into your opposition to the remand motion. You . . . had four law firms work with many attorneys . . . appearing at the hearing. The matter was expedited. It was done in connection with expedited litigation in Chancery. You made numerous arguments. [P]laintiff had to be ready to respond to all of that.

(Feb. Tr. at 28)

It is plain from all of this that a $325,000.00 fee award to Plaintiff is reasonable in this case – a reality now confirmed by the parties' agreement.

**IT IS FURTHER ORDERED** that:

1. Alliant shall pay to Gallagher $325,000.00 via bank wire transfer within five (5) days of the date of this Order.

2. Within one (1) day, Gallagher shall provide Alliant with the bank account information necessary for Alliant to execute the wire transfer.

9

3. The $325,000.00 payment described in Paragraph 1 above shall fully satisfy any obligation of Defendants to pay Gallagher's costs, expenses, and attorneys' fees in connection with the removal and remand proceedings, this Court's October 20, 2020 Order granting Plaintiff's motion to remand and request for costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c) (D.I. 32), and/or Gallagher's application for the same (D.I. 34).

4. The Clerk of Court is directed to **CLOSE** this case.

                                                          HONORABLE LEONARD P. STARK
                                                          UNITED STATES DISTRICT COURT